Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant MICHAEL ARNOLD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-0642 CRB |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| MICHAEL ARNOLD, et al., | Date: November 10, 2010 |
| Defendants. | Time: 2:15 p.m. |
| | Court: Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.     The Indictment Fails to Allege An Offense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.     The Indictment Fails to Allege a Requisite *Mens Rea* Element . . . . . . . . . . . . . . 6

              1.     Logic and Standard English Usage Demonstrate that the Indictment Fails to Allege *Mens Rea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              2.     *Feingold* Demonstrates the Indictment's Failure to Allege *Mens Rea* . . . 9

              3.     The Broader Context of the Indictment Reveals its Failure to Allege *Mens Rea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              4.     Failure to Allege Mens Rea Requires Dismissal . . . . . . . . . . . . . . . . . . . 10

III.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**Cases**

*Moore v. United States*, 423 U.S. 122 (1975) .................................................. 2, 3

*Russell v. United States*, 369 U.S. 749 (1962) ................................................ 2, 6, 10

*United States v. Blinder*, 10 F.3d 1468 (9th Cir. 1993) ................................................ 7

*United States v. Boettjer*, 569 F.2d 1078 (9th Cir. 1978) ................................................ 3

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) ................................................ 2

*United States v. Cruikshank*, 92 U.S. 542 (1875) ................................................ 2

*United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) ................................................ 6, 10

*United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006) ................................ *passim*

*United States v. Hayes*, 794 F.2d 1348 (9th Cir. 1986) ................................................ 3

*United States v. Hockings*, 129 F.3d 1069 (9th Cir. 1997) ................................................ 5 n.1

*United States v. Kaplan*, 895 F.2d 618 (9th Cir. 1990) ................................................ 3

*United States v. Polan*, 970 F.2d 1280 (3d Cir. 1992) ................................................ 7 n.2

*United States v. Rosenberg*, 515 F.2d 190 (9th Cir. 1975) ................................ 3, 6n.1

**Statutes, Rules, and Regulations**

21 U.S.C. § 841 ................................................ 2, 5, 6 n.1, 7, 11

21 C.F.R. § 1306.04 ................................................ 6 n.1

Fed. R. Crim. P. 7 ................................................ 6

I. INTRODUCTION

In its opposition brief, the government again acts as though this is a typical drug case. It seems not to want to acknowledge that, according to the indictment, all of the controlled substances allegedly distributed by Mr. Arnold and his associates were approved by a licensed doctor and dispensed by a licensed pharmacist. That fact converts the case from a typical one to a case in which the indictment must do more than simply track the language of the statute. Where guilt depends so crucially on the establishment of facts – in this case, that the doctors abandoned all pretense of medical professionalism and were acting as drug pushers – the indictment must descend into the particulars. The indictment fails in this respect.

Even more fundamentally, the indictment does not even state the elements of the offense correctly. The government's efforts to read into the indictment the mental state that it omitted when it drafted the indictment are unavailing. The indictment fails to include an essential *mens rea* requirement, and for this reason as well it should be dismissed.

II. ARGUMENT

A. The Indictment Fails to Allege An Offense

The indictment in this case describes an arrangement among business professionals, doctors and pharmacists that the government disfavors – one in which controlled substances are distributed pursuant to doctors' prescriptions issued after reviews of medical questionnaires instead of in-person examinations. *See* Indictment, ¶ 3. The indictment then conclusorily alleges that these prescriptions were issued outside the usual course of professional practice and not for a legitimate medical purpose. But at no point does the indictment explain how the alleged conduct violates the law or present any facts on which the Court, the defendants, or, most importantly, the grand jury could reach such a conclusion.

In opposition to the motion to dismiss, the government claims that an indictment need only recite the language of the statute (and presumably the federal regulation the government relies on here) but need not allege specific facts or the government's theory of how the statute was violated. *See*, *e.g.*, Government Opposition to Motion to Dismiss ("Opp."), 9 (citing *United*

*States v. Ely*, 142 F.3d 1113 (9th Cir. 1998) (bank fraud case)). That may be the rule for a typical case in which the grand jury will have no difficulty determining whether or why the alleged conduct constitutes a crime. In this case, however, the law requires more than simple recitation of the words of the statute and the regulation. *See Russell v. United States*, 369 U.S. 749, 763 (1962) ("Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."); *id.* at 765 ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, it must descend to particulars.") (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)) (internal quotation marks omitted); *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (same). In a case like this, a judge cannot determine whether or how a grand jury has determined a crime was committed unless the government presents facts that make clear the means by which the defendant allegedly violated the law. Because the indictment fails in this respect, it must be dismissed.

Under clear, controlling law in this circuit, where the government pursues a 21 U.S.C. § 841(a) prosecution involving alleged distribution of controlled substances approved by a licensed doctor, it must allege and prove the doctors involved completely abdicated their medical duties and acted as mere drug pushers. The government cannot bring criminal charges based on its disagreement with certain prescribing practices. *See Moore v. United States*, 423 U.S. 122 (1975); *United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006). The *Feingold* court repeatedly stated that dispensing a controlled substance pursuant to a prescription is criminal only where the prescription issues outside the usual scope of professional practice and not for a legitimate medical purpose; the prescribing doctor's conduct must be so clearly criminal that there is no risk of ensnaring physicians whose medical judgments are merely controversial or incompetent. *See Feingold*, 454 F.3d at 1007 ("[O]nly after assessing the standards to which medical professionals generally hold themselves is it possible to evaluate *whether a practitioner's conduct has deviated so far from the 'usual course of professional practice' that his actions*

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB        2

*become criminal*.") (emphasis added); *id.* ("Knowing how doctors generally ought to act is essential for a jury to determine whether a practitioner has acted not as a doctor, or even as a *bad* doctor, but as a 'pusher' whose conduct is without a legitimate medical justification.") (emphasis in original)). The Ninth Circuit's rule recognizes the distinction Congress drew between unlawful drug dealing by doctors and well-intentioned but controversial or incompetent prescribing practices. It recognizes the difficulties lay people have assessing medical decisions after the fact and the risks of letting criminal penalties depend on post hoc evaluations of medical judgments. It recognizes the allocation of authority between federal and state governments in regulating the practice of medicine.

The government may be right that an indictment need not contain the magic words, "the doctor, in issuing the prescriptions, was acting as a mere drug pusher." However, the inescapable import of *Feingold* is that the government must allege facts sufficient to conclude that the grand jury believed the prescription-writing doctors had ceased acting like doctors and begun acting like drug pushers. The government has failed to do so in this case.

*Moore*, *Feingold,* and other Ninth Circuit cases cited by the prosecution (*see* Opp., 4) demonstrate the kinds of allegations and proof that will meet this burden. In *Feingold*, the defendant prescribed Schedule II narcotics after his authority to do so was revoked, and he prescribed narcotics in quantities that would have killed the patients if taken. *Feingold*, 454 F.3d at 1004-05. *See also United States v. Kaplan*, 895 F.2d 618, 620-21 (9th Cir. 1990) (doctor took what he believed to be marijuana in exchange for prescriptions for controlled substances and wrote 19 prescriptions in one month to one undercover agent and 21 prescriptions in one month to another undercover agent); *United States v. Hayes*, 794 F.2d 1348, 1352-53 (9th Cir. 1986) (doctor accused of prescribing excessive amounts of Schedule II narcotics to known narcotic addicts); *United States v. Boettjer*, 569 F.2d 1078, 1081 (9th Cir. 1978) (doctor prescribed Schedule II controlled substances to undercover agents who scrupulously avoided giving any medical reason for seeking the drugs); *United States v. Rosenberg*, 515 F.2d 190, 192 & nn. 2 & 3, 199 (9th Cir. 1975) (doctor fabricated reasons for prescribing controlled substances, including those in Schedule II, to undercover agents who asked for drugs by their street names, informed

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB        3

prescribing doctor they had no legitimate medical reason for seeking drugs, and told doctor they were diverting the drugs to other people). The facts in these cases demonstrate that the doctors knew their prescriptions were for other than legitimate medical purposes or intended the prescriptions for other than legitimate medical purposes.

Here, the government has failed to allege facts on the basis of which a reasonable person could conclude the doctors knew their prescriptions were not for legitimate medical purposes or intended them to be for something other than a legitimate medical purpose. The indictment does not allege the doctors over-prescribed medication; it does not allege the doctors prescribed medication to known addicts; it does not allege those seeking medications failed to articulate a medical reason for the prescription; it does not allege the doctors did not review the medical information provided to them by the recipients of the medication; it does not allege the doctors issued prescriptions that were not indicated by the medical information they had; it does not allege doctors prescribed to anyone whom they knew to be diverting the medication; it does not allege the doctors ignored their medical judgment in favor of a profit motive or otherwise abdicated their professional duty in any way. One could dispute which or how many of these allegations would suffice to state an offense, but it is clear that, in the absence of any such allegation, the indictment fails to state an offense.

The government contends the indictment properly alleges an offense because it states that "defendants 'did knowingly and intentionally distribute, and possess with intent to distribute, outside the scope of professional practice and not for a legitimate medical purpose, one or more controlled substances[.]'" Opp., 9. The rest of the indictment, the government contends, merely provides "background facts" and "examples by which [sic] the defendants' conduct was outside the scope of professional practice." *Id.* In the government's view, whether the doctors' prescription practice is criminal is a matter of degree to be decided by the jury. At a certain point, this is true, but under *Feingold* the indictment must at least contain allegations of acts that can turn a doctor into a criminal.

The government – presumably because of vagueness and *ex post facto* problems associated with charging a Ryan Haight Online Consumer Protection Act crime for pre-Ryan-

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB                4

Haight-Act-conduct – eschews reliance on the absence of in-person examinations as the legal theory behind its charges here. *See* Opp., 9-10. The government argues that the lack of an in-person physical is only one of the ways defendants are alleged to have acted outside the scope of professional practice. *Id.* A commonsense reading of the indictment belies such a claim, because the indictment contains no other allegations indicating how defendants' conduct violates the standard. For the reasons articulated in the motion to dismiss, basing a § 841(a) prosecution on a controversial but not explicitly forbidden practice exceeds the scope of the statute in that (1) Congress did not intend the § 841(a) to punish such conduct, (2) the "rule of lenity" and the doctrine of avoiding constitutional issues (here, the vagueness and *ex post facto* problems inherent in such a prosecution) require resolving doubt about Congress's intent in favor of Mr. Arnold, and (3) enactment of the Ryan Haight Act and failure to act on similar previous legislation confirms that the law governing at the time of the conduct alleged in the indictment was not proscribed by law.[1]

---

[1] These issues were thoroughly discussed in the motions to dismiss filed by Mr. Arnold and Mr. Carozza. While we rely principally on the arguments contained therein, and note that nothing in the government's opposition presents a serious challenge to that analysis, we discuss a few of the government's particularly inapt arguments.

First, regarding the import of the Ryan Haight Act, the government's reliance on *United States v. Hockings*, 129 F.3d 1069 (9th Cir. 1997), is misplaced. As the government says, the *Hockings* case did concern modification of a statute to include previously unmentioned conduct. Opp., 12-13. There, the Ninth Circuit held that accepting the defendant's argument would create a statutory loophole "inconsistent with congressional intent." Here, by contrast, Mr. Arnold has advanced a reading of Congressional intent that vindicates one of Congress's dual aims in the CSA, *i.e.*, the intent to safeguard doctors from practicing at their peril. The defendant in *Hockings* argued that a technicality prevented prosecution; Mr. Arnold does not seek dismissal based on a technicality. He seeks to hold the government to the limits Congress set and the Ninth Circuit has recognized: to prevent prosecution of doctors and their associates unless and until they act like drug pushers.

Second, regarding the vagueness problems inherent in a prosecution based on the government's disagreement with the methodology employed in the alleged "internet pharmacy" business, the government misses the crucial distinction between the as-applied challenge advanced by Mr. Arnold and a facial challenge. The government thus argues that "the Ninth Circuit has already addressed this issue and concluded that the statute is not unconstitutionally vague when applied to a physician who distributes drugs 'that he does not in good faith believe

Instead of explaining how the defendants are alleged to have acted outside the usual course of professional practice, the government suggests defendants and this Court wait until they "become familiar with the United States' evidence through discovery and with its theories of liability through trial." Opp., 10. This approach would reduce the grand jury protection to a nullity. *See Russell*, 369 U.S. at 770 (noting the grand jury right would vitiated if prosecutors or courts could guess at the meaning of an unclear indictment). If the grand jury returns an indictment alleging all the elements of a crime and sufficient facts indicating that crime was committed, the government has wide latitude to prove its case at trial with whatever admissible evidence it can adduce and under whatever theory it pleases. The only prefatory requirement is that the indictment actually allege criminal conduct. That is where this indictment falls short.

### B. The Indictment Fails to Allege a Requisite *Mens Rea* Element

When raised in a timely manner, "failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (dismissing Hobbs Act conviction because indictment failed to allege an "implied" mens rea element); Fed. R. Crim. P. 7(c) (requiring indictment contain "statement of the essential facts constituting the offense charged"). Such a defect is not the type subject to harmless error analysis under Rule 52(a) of the Federal Rules of Criminal Procedure. *Du Bo*, 186 F.3d at 1179. In assessing the sufficiency of an indictment, the Ninth Circuit has said, the "indictment should

---

are for legitimate medical purposes.'" Opp., 14 (quoting *Rosenberg*, 515 F.2d at 197). Not only does this argument offer no support for the government's position, it illustrates precisely why the indictment fails to state a claim. The charging document here does not allege the mental state specified in *Rosenberg* and states no facts that could indicate the grand jury found such a mental state. To be clear, Mr. Arnold agrees that under Supreme Court and Ninth Circuit precedent, the government may prosecute doctors, pharmacists, and their business associates under § 841(a). Moreover, Mr. Arnold recognizes that courts have held the standard articulated in 21 C.F.R. § 1306.04 is not overly vague as a general matter. The argument advanced in Mr. Arnold's motion, and renewed here, is that § 841(a) and its attendant regulations are unconstitutionally vague as applied to *this* prosecution, which alleges only that the doctors conducted no in-person examinations prior to prescribing controlled substances. The government can cite no Ninth Circuit opinion to the contrary, and for the reasons discussed in the motions to dismiss the weight of authority indicates that the Ninth Circuit would agree if confronted with the question.

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB              6

be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (internal quotation marks omitted).

The government acknowledges, as it must, that "when a drug is distributed pursuant to a prescription issued by a physician," one element of a § 841(a) offense is that the physician acted with intent to distribute controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. *See* Opp., 18; *Feingold*, 454 F.3d at 1008 (government must prove "the practitioner acted with intent to distribute the drugs *and with intent to distribute them outside the course of professional practice*") (emphasis added). In fact, in its opposition the government demonstrates that it is capable of alleging this requisite element. *See* Opp., 18 (alleging "the defendant knowingly and intentionally act[ed] outside the course of professional practice") (internal quotation marks omitted). However, the indictment contains no such allegation. Consequently, it fails to allege a requisite element and fails to state an offense.[2]

In its opposition, the government contends that paragraph 43 of the indictment sets out the essential elements. Opp., 18. That paragraph reads: "[D]efendants did knowingly and intentionally distribute, and possess with intent to distribute, outside the scope of professional practice and not for a legitimate medical purpose, one or more controlled substances[.]" The government argues that the adverbs "knowingly" and "intentionally" in this paragraph must be read to modify (1) the verbs immediately following them ("distribute" and "possess"), (2) the direct object of those verbs ("one or more controlled substances"), and (3) the parenthetical phrase set off in commas between the verbs and their direct object ("outside the scope of professional practice and not for a legitimate medical purpose"). This argument is belied by

---

[2] In an effort to save its defective indictment, the government cites a Third Circuit opinion to support its claim that "[i]t is debatable whether the 'exception' to the statutory scheme that the distribution was outside the scope of professional practice must be alleged in the indictment at all." *See* Opp., 19 n.9 (citing *United States v. Polan*, 970 F.2d 1280 (3d Cir. 1992)). Whatever may be the subject of debate in the Third Circuit, the Ninth Circuit has made unmistakably clear that intentionally acting outside the course of professional practice and without a legitimate medical purpose is an element of a § 841(a) offense in this jurisdiction when controlled substances are distributed pursuant to a doctor's prescription.

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB          7

rules and practices of standard English usage, the Ninth Circuit's formulation of the *mens rea* elements in *Feingold*, and the context of the indictment read as a whole.

### 1. Logic and Standard English Usage Demonstrate that the Indictment Fails to Allege *Mens Rea*

First, under a plain, commonsense, natural reading, paragraph 43 does not allege that the doctors in this case acted with intent to distribute controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. To be sure, paragraph 43 includes the adverbial clause, "outside the scope of professional practice and not for a legitimate medical purpose." However, because that clause it is set off in commas, it is detached from the key *mens rea* allegation and merely describes a factual allegation about *how* the controlled substances were distributed. It does not describe the mental state of the doctors when they acted. The adverbs "knowingly" and "intentionally" modify the verbs "distributed" or "possessed with intent to distribute." The adverbial clause following those verbs (beginning "outside the usual course") also modifies the verbs "distributed" or "possessed." But the first adverbs, "knowingly" and "intentionally," do not modify the adverbial clause ("outside the usual course . . .") that modifies the same verbs.

The problem with the government's construction is best understood by considering a couple examples:

- **"Jim purposefully walked, tripping the booby trap, toward Elaine."**

This is an assertion that Jim walked purposefully toward Elaine and an assertion that Jim's walking tripped the booby trap. But it is not an assertion that Jim purposefully tripped the booby trap. The adverb "purposefully" does not modify the adverbial phrase "tripping the booby trap."

- **"Joe intentionally robbed, in an amateurish way that was sure to get him caught, the bank on Fifth Street."**

This is a statement that Joe intentionally robbed the bank and that he did so in an amateurish way that was sure to get him caught. This statement does not indicate that Joe intended to act amateurishly or to get himself caught.

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB                    8

Logic and usage dictate that neither of these examples articulates a mental state regarding the phrase set off in commas. In the same way, logic and usage dictate that the indictment fails to allege the requisite mental state of the doctors vis-à-vis the usual course of professional practice standard.[3]

In an attempt to rewrite the charging document, the government contends that the indictment alleges the defendants acted "knowingly and intentionally." Then, after inserting a colon, the government provides a numbered list of acts purportedly modified by those adverbs. Opp., 19. Had the indictment been drafted this way, it may well have alleged the essential elements of the crime. This is because standard usage dictates that an introductory phrase preceding a colon and a numbered list modifies all the items on that list. Unfortunately for the government's argument, however, that is not how the government wrote the indictment.

As the preceding discussion demonstrates, ours is not a "tortured reading of the language in the indictment," as the government claims (Opp., 19), but the most natural reading. Far from being a hyper-technical distinction, the requirement that an indictment articulate each *mens rea* element is the only way to ensure defendants' Fifth Amendment grand jury rights.

### 2. *Feingold* Demonstrates the Indictment's Failure to Allege *Mens Rea*

Second, the Ninth Circuit's articulation of the *mens rea* elements in this context confirms the insufficiency of the indictment. The government must prove a defendant "acted with intent to distribute the drugs **and** with intent to distribute them outside the course of professional practice." *Feingold*, 454 F.3d at 1008 (emphasis added). There are two separate *mens rea* elements, and the *Feingold* court chose the only possible way to make sure both are sufficiently stated: it repeated the intent element before each act to which it applies. The indictment here includes only a single *mens rea* element. Thus, it alleges intentional or knowing distribution but fails to allege the doctors intentionally acted outside the scope of professional practice and not for a legitimate medical purpose.

---

[3] There is no allegation anywhere in the indictment concerning the mental state of the doctors' alleged business associates, such as Mr. Arnold, vis-à-vis the usual course of professional practice.

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB           9

### 3. The Broader Context of the Indictment Reveals its Failure to Allege *Mens Rea*

Finally, reading paragraph 43 in its broader context further demonstrates that the indictment fails to state an essential element. Paragraph 43 (and the identical allegations in paragraphs 45, 47, and 49) is the only place the indictment applies the words "knowingly" and "intentionally" to Mr. Arnold's conduct. The one other place the indictment makes mention of the "usual course of professional practice" (in relation to Mr. Arnold), it completely omits any *mens rea* allegation. *See* Indictment ¶ 15 ("As part of the conspiracy, several doctors, including Valdivieso, approved customer orders for controlled substances that were not for a legitimate medical purpose and when the doctor was not acting in the usual course of his or her professional practice."). The allegation in paragraph 15 asserts an act on the part of the doctors, "approv[ing] customer orders for controlled substances," but fails to articulate any mental state of the issuing doctors. Paragraph 15 simply characterizes the prescriptions themselves, just as paragraph 43 merely characterizes the distribution instead of alleging a mental state. Nowhere does the indictment allege that the doctors knew or intended their actions to be outside the usual course of professional practice and not for a legitimate medical purpose. *See* Indictment ¶¶ 16, 17. Read in this larger context, the deficiencies of the allegations in paragraph 43 become clearer still.

### 4. Failure to Allege *Mens Rea* Requires Dismissal

The government contends that any deficiencies in the indictment are mere technicalities not requiring dismissal. Opp., 19. This is not so. Dismissal is the only remedy for an indictment's failure to allege an essential element. *Du Bo*, 186 F.3d at 1179. While a court considering a motion to dismiss a civil complaint must draw all inferences in favor of the plaintiff, no corollary exists in the criminal context. The indictment must be read as a whole and construed in a commonsense way; however, because the Fifth Amendment permits prosecution of "infamous crimes" only "on a presentment or indictment of a Grand Jury" no prosecutor or court is permitted to guess at the meaning of an unclear indictment. *See Russell*, 369 U.S. at 770 ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB          10

of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.").

The failure to alleged a mental element is especially problematic in the context of this statute, under which conviction depends on an examination of a defendant's "subjective state of mind" and proof "that [the defendant] intended to act outside the course of his professional practice." *Feingold*, 454 F.3d at 1007. In a section 841(a) prosecution, "the jury [must] look into [a practitioner's] mind to determine whether he prescribed the pills for what he thought was a medical purpose or whether he was passing out the pills to anyone who asked for them." *Id*., at 1008 (alterations in original). "[T]he jury must make a finding of intent not merely with respect to distribution, but also with respect to the doctor's intent to act as a pusher rather than a medical professional." *Id.* In holding that "the standard for criminal liability under § 841(a) requires more than proof of a doctor's intentional failure to adhere to the standard of care," the *Feingold* court stated that government must prove, that the "doctor has intentionally prescribed controlled substances for no legitimate medical purpose." *Id.* at 1010. The indictment here fails to make this allegation and must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Mr. Arnold respectfully requests that the Court dismiss the indictment.

Dated: November 24, 2010　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　Edward W. Swanson
　　　　　　　　　　　　　　　　　　　　　August Gugelmann
　　　　　　　　　　　　　　　　　　　　　SWANSON & McNAMARA LLP
　　　　　　　　　　　　　　　　　　　　　Attorneys for MICHAEL ARNOLD

**Reply in Support of Motion to Dismiss**
*United States v. Arnold*, CR 10-0642 CRB　　　11