Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant MICHAEL ARNOLD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 10-0642 CRB |
|---|---|
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR SEVERANCE** |
| vs. | Date: January 19, 2011 |
| MICHAEL ARNOLD, et al., | Time: 2:15 p.m. |
| Defendants. | Court: Hon. Charles R. Breyer |

**NOTICE**

PLEASE TAKE NOTICE, that on January 19, 2011 at 2:15 p.m., or as soon as the matter may be heard before the Honorable Charles R. Breyer, defendant Michael Arnold will and hereby does move the Court for an order severing Arnold from the other 10 other defendants charged in the Superceding Indictment. This motion is based upon the instant notice, the attached memorandum of points and authorities, the records in this case, and upon such argument as will be made at the hearing on January 19.

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Michael Arnold is charged in connection with one conspiracy in a Superseding Indictment concerning what the government has called three "separate but related" conspiracies. The Superseding Indictment (hereinafter "indictment") names 11 defendants spread among the three conspiracies. While the law favors joint trials of defendants charged in the same indictment, Rule 14 of the Federal Rules of Criminal Procedure permits severance where joinder would prejudice a party. Under controlling law, a defendant must demonstrate "compelling circumstances" for severance to overcome the efficiency benefits of joinder.

Here, refusal to sever Arnold's trial would result in manifest prejudice to Arnold and his rights to a speedy trial under the Constitution and the Speedy Trial Act of 1974. Arnold is the only one of the eleven defendants named in the indictment who is incarcerated pending trial. Thus, his urgency to exercise his speedy trial rights, vindicate himself, and get out of jail is not shared by his co-defendants, who face no possibility of incarceration until the completion of a trial. The Supreme Court has recognized the prejudice, for speedy trial purposes, to a defendant incarcerated pending trial. *See Barker v. Wingo*, 407 U.S. 514, 532-33 (1972).

While Congress, through the Speedy Trial Act, codified certain time limits for bringing federal charges to trial, exceptions to those time limits permit co-defendants to play a determinative roll in delaying Arnold's trial. Thus, no matter how urgently Arnold seeks to bring his case to trial, he will suffer delay whenever a co-defendant files a motion (and during briefing, argument, and consideration of that motion) regardless if that motion has anything to do with him (or even has anything to do with the conspiracy he is alleged to have participated in). *See* 18 U.S.C. § 3161(h)(6). And, Arnold will have to wait in jail if any of his co-defendants (or the government) seeks a continuance on the basis of the complexity of the case, *see* 18 U.S.C. § 3161(h)(7) – another matter over which Arnold has no control either in regard to how the case was charged (lumping together three conspiracies the government concedes are "separate") or how diligently he and his counsel prepare for trial.

**Motion for Severance**
*United States v. Arnold, et al.*, CR 10-0642 CRB          2

While Arnold does not here contend that joinder was per se inappropriate under Rule 8 of the Federal Rules of Criminal Procedure, when balancing under Rule 14 the manifest prejudice to Arnold of joinder against the potential efficiency gains, the Court should afford little deference to the government's choice to charge three separate conspiracies in a single indictment. Whatever convenience the government saw in charging these separate conspiracies together, it appears to be unrelated to judicial efficiency and unquestionably contrary to the interests of the defendants, particularly Arnold. If tried together, this case will likely resemble three separate trials, unnaturally appended to one another. Under these circumstances, there is little weight on the side of the scale for joinder, and the case for severance is stronger than in most federal conspiracy cases.

In the light of the relatively slow pace of this case so far, the expressed intentions of other defendants to file numerous motions unrelated to Arnold and his interests, and the expressed intentions of other defendants to seek delay based on the "complexity" of this case, Arnold stands to suffer manifest prejudice unless his case is severed for trial. Consequently, this Court should grant Arnold's motion to sever.

## II.     BACKGROUND

The superseding indictment alleges three separate conspiracies to distribute controlled substances with the aid of Internet communications. According to the allegations, the first conspiracy, dubbed by the government the "Safescripts Conspiracy," comprises eight defendants: Christopher Napoli, Daniel Johnson, Joseph Carozza, Salvatore Lamorte, Steven Paul, Jeffrey Entel, Jeffrey Herholz, and Darrell Creque. *See* Indictment, at ¶¶ 1-13, 33, 38. The allegations pertaining to the second conspiracy, the so-called "Pitcairn Conspiracy," name five defendants: Michael Arnold, Diego Podolsky Paes, Lamorte, Herholz, and Creque. *Id.* at ¶¶ 14-23, 41, 52. The indictment alleges that three defendants participated in the third conspiracy, the "United Mail Pharmacy Services/Pharmizon Conspiracy," or UMPS conspiracy, namely: Paul, Entel, and Dino Antonioni. *Id.* at ¶¶ 24-31, 55, 59, 62, 63.

Arnold is named only in the Pitcairn conspiracy. Lamorte, Herholz, and Creque are named in both the Safescripts and Pitcairn conspiracies and are alleged to have played the same

roles in the separate businesses identified in each (consultant, pharmacy owner, and pharmacist, respectively), but the specific conduct alleged against them is distinct with regard to each conspiracy.

The alleged time frames of the three separate conspiracies are as follows. The Safescripts conspiracy is alleged to have spanned from "no later than November of 2004" until "in or about December 2006." Indictment, at ¶ 33. The Pitcairn conspiracy is alleged to have commenced "no later than May of 2003" and ended "in or about April of 2007." *Id.* at ¶ 41. The UMPS conspiracy is alleged to have begun "no later than January 2006 and end[ed] in or about March of 2008." *Id.* at ¶ 55.

Of the eleven defendants, only Arnold is incarcerated pending trial. The remaining defendants are free on bond, with the exceptions of Diego Paes and Steven Paul, who have made no appearance.

### III.   LEGAL STANDARD

Rule 8(b) of the Federal Rules of Criminal Procedure allows joinder of two or more defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 14(a) provides that if the joinder of defendants for trial appears to prejudice a defendant or the government, the Court may sever the trials or provide such other relief as justice requires. While "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" because generally "[j]oint trials . . . promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts," *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (internal quotation marks omitted), this "general rule" in favor of joint trials can be overcome by "compelling circumstances." *United States v. Silla*, 555 F.2d 703, 707 (9th Cir.1977).

The decision whether to grant a separate "is left to sound discretion of the trial judge, to be exercised in light of potential prejudice to defendant on the one hand and obvious interest of judicial economy on the other." *United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1977); *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir. 1978). The standard for severance is

whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion. *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976). Prolonged delay and encumbrance of speedy trial rights regarding an accused incarcerated pending trial are among the compelling reasons for severance recognized by the federal courts. *See*, *e.g.*, *United States v. Byrd*, 466 F.Supp.2d 550 (S.D.N.Y. 2006) (grant severance on basis of extended delay of trial of incarcerated defendant who was charged with participating with co-defendants in racketeering conspiracy and narcotics conspiracy); *United States v. Magnotti*, 50 F.R.D. 1, 2 (D. Conn. 1970) ("delay in the trial of one defendant is another [factor] that might well be taken into account" in granting severance under Fed. R. Crim. P. 14); *see also United States v. Solerno*, 108 F.3d 730, 738 (7th Cir. 1997) (noting lack of incarceration during delay before trial undermined claim for severance).

## IV. ARGUMENT

### A. Severance will not Result in Substantial Loss of Efficiency or Duplication of Effort

As discussed above, the instant indictment charges eleven defendants in three separate and distinct conspiracies. The government has conceded that the indictment alleges three "separate" conspiracies. *See* Notice of Related Cases in Criminal Actions (Docket 8), at 2. In fact, an assertion the government made in an effort to keep two cases (*U.S. v. Smoley*, CR 10-0619 JSW and *U.S. v. Perkins*, CR 10-0620 WHA) from being related to this matter applies almost equally well to the case against Arnold (and the Pitcairn conspiracy): "the *Napoli* indictment encompasses a much broader range of facts, including two additional conspiracies, and involves eleven additional defendants." *Id.*

Arnold is named only in the allegations concerning the second conspiracy, the so-called "Pitcairn Conspiracy." This conspiracy centers on a series of Web sites allegedly owned by Arnold and Diego Podolsky Paes. In addition, the indictment alleges three others participated in the Pitcairn conspiracy: Salvatore Lamorte, as a consultant, and Jeffrey Herholz and Darrell Creque, in connection with the Kwic Fill pharmacy. None of these defendants is named in the UMPS conspiracy, and neither Arnold nor Paes is named in the Safescripts conspiracy. The

Safescripts conspiracy concerns eight defendants, five of whom have nothing to do with the conspiracy in which Arnold is charged.  In sum:  (1) Arnold is not alleged to have participated in either the Safescripts or the UMPS conspiracy; (2) none of the defendants named in the Pitcairn conspiracy, in which Arnold is charged, is alleged to have participated in the UMPS conspiracy; (3) only three of the defendants charged in the Pitcairn conspiracy are alleged to have participated in the Safescripts conspiracy – a "consultant," a pharmacy owner, and a pharmacist.

Further, according to the allegations, the conduct associated with each of the three conspiracies is separate and distinct.  That is, none of the defendants are alleged to have taken actions in connection with one conspiracy that involved any other conspiracy.  As relevant here, the three defendants charged in the Pitcairn conspiracy who are also charged in the Safescripts conspiracy – Lamorte, Herholz, and Creque – are alleged to have committed distinct actions related to each conspiracy.  Nothing those three defendants are alleged to have done in relation to the Pitcairn conspiracy, the one involving Arnold, has anything to do with the Safescripts conspiracy.  Thus, trying the multiple conspiracies together will result in minimal efficiency gains because proof of these defendants' conduct with respect to each conspiracy will have to be presented *seriatim*.  At the same time, because each of those three defendants is alleged to have played precisely the same role in both the Safescripts and Pitcairn conspiracies, the Court would be able to appropriately account for their conduct with respect to Pitcairn in a trial on Safescripts – either as related conduct at trial or as relevant conduct at sentencing.  Accordingly, preventing the manifest prejudice to Arnold by severing his case for trial will not result in any significant duplication of effort with regard to other defendants.

The time periods of the three conspiracies are also distinct, as described above.  The Safescripts conspiracy is alleged to have spanned from November 2004 through December 2006, Indictment, at ¶ 33, Pitcairn from May 2003 through April 2007, *id.*, at ¶ 41, and UMPS from January 2006 through March 2008.  *Id.*, at ¶ 55.

Given that there is substantial overlap neither in the time period covered by the three conspiracies nor in the alleged participants, the main reason the government charged the three separate conspiracies in a single indictment appears to be that each involves "illegal distribution

of controlled substances by Internet pharmacies." *See* Related Case Notice, at 2. There is no doubt certain issues will be common to the three conspiracies, such as medical and pharmacy prescription standards and how the government conducted its investigations. However, the mere fact that all three alleged conspiracies involve "Internet pharmacies" is no more sufficient a reason to force them into one proceeding than would be the fact that three separate street drug distribution operations in three different cities used coded lingo or similar protocols for distribution or, unbeknownst to each other, shared a common distributor.

Under these circumstances, severing the Pitcairn conspiracy from the others appears unlikely to lead to a significant duplication of proceedings, and unnaturally keeping them together would not conserve significant judicial resources.[1] Accordingly, there is little weight on the side of keeping Arnold and the Pitcairn conspiracy in the larger case.

### B. Arnold will be Significantly Prejudiced by Failure to Grant Severance

On the other side of the scale, the prejudice to Arnold – the only defendant who is incarcerated pending trial – would be substantial and irremediable were the Court to keep him appended to what will be, in the government's own words, a "lengthy and significant litigation." Case Relation Notice, at 3. If Arnold is forced to remain one of eleven defendants in a multi-conspiracy mega-case, his day in court will come only as quickly as the most deliberate defendant allows, and his speedy trial rights would be significantly impaired. Arnold has previously expressed, and hereby reaffirms, his intent to exercise his speedy trial rights and bring this matter to trial in as expeditious a manner as possible.

The fact of Arnold's incarceration pending trial places him in a distinct position vis-à-vis his co-defendants both as a practical matter and under the law. As a practical matter, Arnold has every incentive to exercise his speedy trial rights and put the government to its burden as soon as is practicable. Presently, he is both presumed innocent and incarcerated – incarcerated at the

---

[1] While it is not a central consideration here, it must be noted that judicial economy may be served by severing Arnold and permitting him to go to trial within the statutorily mandated time period. Depending on the events and result of an Arnold trial, either the government or other defendants may reassess their position in resolving this case without the need of trial.

**Motion for Severance**
*United States v. Arnold, et al.*, CR 10-0642 CRB       7

Alameda County Glenn Dyer Detention Facility no less (and not at a low- or medium-security federal prison, where he would likely be assigned if he were convicted after trial). By contrast, his co-defendants are free. They face no risk of incarceration unless and until they are found guilty at trial (absent a violation of conditions of their release, a matter completely within their control). Hence, while the ignominy of pending charges is no insignificant matter even to someone accused and at large, the urgency to bring a case to trial and essay to vindicate oneself is on an entirely different scale for one who finds himself in prison pending trial.

The Supreme Court has observed: "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982). "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," including "prevent[ion of] oppressive pretrial incarceration." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). As the Supreme Court put it:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.

*Id.* at 532-33.

Recognizing the significant differences created by pre-trial incarceration, the Speedy Trial Act grants "a detained person who is being held in detention solely because he is awaiting trial" the right to a trial within 90 days of the commencement of such detention. *See* 18 U.S.C. § 3164(a)-(b).[2] However, the Speedy Trial Act also excludes from this time limit (and the more

---

[2] As of the date of this filing, Arnold has already spent more than 90 days in jail. To be sure, during a fair portion of this time the Court was considering Arnold's motion to dismiss, among other motions, so Arnold's speedy trial rights have not yet been impaired. This fact is noted only

**Motion for Severance**
*United States v. Arnold, et al.*, CR 10-0642 CRB        8

generally applicable 70-day time clock under § 3161(c)(1)) all periods of delay listed under 18 U.S.C. § 3161(h).  *See* 18 U.S.C. § 3164(b).  Such exclusions include a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).This means that, if this Court denies severance here, each of Arnold's codefendants can stop Arnold's speedy trial clock – and force him to wait, *in jail* – while such codefendants fight out various motions, already known to include a transfer motion (pertaining to jurisdictions and considerations completely unrelated to Arnold) and discovery motions (unrelated to Arnold or the conspiracy in which he is alleged to have participated), with many more to come, no doubt.  Also, excluded from the time limit for Arnold's trial would be "[a]ny period of delay resulting from a continuance," even if requested by the government, with such continuance potentially turning on the complexity of the case, which itself may turn on "the number of defendants."[3] *See* 18 U.S.C. § 3161(h)(7)(B)(ii).  As such, unless the Court severs Arnold, the government would be permitted to significantly encumber or infringe Arnold's speedy trial rights simply by charging him along with at least six people (the five defendants in "Conspiracy One" who are distinct plus the one additional defendant named in "Conspiracy Three") whom, according to the government's allegations, he has had absolutely nothing to do with.  In short, Arnold's speedy trial rights have been and will continue to be held hostage to considerations completely separate from his guilt or innocence – and all the while he will be in jail.

In important respects, this case resembles *United States v. Byrd*, 466 F.Supp.2d 550 (S.D.N.Y. 2006).  There, Judge Rakoff granted the severance motion of one defendant, Jermail Manuel, in a twelve-defendant case alleging racketeering and narcotics conspiracies.  Manuel was incarcerated pending trial and contended that he would suffer manifest prejudice if his trial were delayed for the length of time it would take the government to determine whether to seek

---

to illustrate the slow pace this litigation, and the long period Arnold can expect to languish in jail should he not be severed.

[3] Counsel for other defendants have already indicated their intent to seek extended delay on the basis of complexity of this case.

**Motion for Severance**
*United States v. Arnold, et al.*, CR 10-0642 CRB        9

the death penalty for five of his co-defendants (the government had determined Manuel was not eligible for the death penalty). The court held that the extended delay of the trial of Manuel – "who has pleaded not guilty, who is being detained without bail, and who has expressly invoked his speedy trial rights" – while issues related to his co-defendants were worked out was "unreasonable and totally at variance with the fundamental purposes of the Speedy Trial Act." *Id.* at 553. Further, "[a]s for the Government's argument that it will be prejudiced by having to try its case twice," the court found "that argument proves too much, since it would follow that no severance would ever be granted. Moreover, the expected trial length in this case is only a few weeks, and the Government has failed to specify with any particularity how presenting its proof twice will materially prejudice it in this particular case." *Id.*

In much the same way, Arnold will suffer substantial prejudice if he is forced to wait in jail while the government, other defendants, and the Court work out issues unrelated to him.[4] This harm can be avoided by severing the case against Arnold for separate trial. As the above discussion demonstrates, any loss of efficiency severance would bring is substantially outweighed by the manifest prejudice joinder would cause Arnold. Thus, the Court should exercise its discretion to sever the case against Arnold for trial.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Arnold's motion to sever.

Dated: December 29, 2010                     Respectfully submitted,

                                             /s/
                                             Edward W. Swanson
                                             August Gugelmann
                                             SWANSON & McNAMARA LLP
                                             Attorneys for MICHAEL ARNOLD

---

[4] Of course, severing Arnold for trial will also prevent potential harm from "spill-over" effects, inconsistent or mutually-exclusive defenses between and among defendants, jury confusion, and prolonged trial proceedings (most of which will not pertain to Arnold).